### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | |
|---|---|
| **JACQUELYN CRUSE, individually and on behalf of all others similarly situated,** | **CASE NO.:** |
| **Plaintiff,** | |
| **v.** | **CLASS ACTION** |
| | **DEMAND FOR JURY TRIAL** |
| **SPECIALIZED LOAN SERVICING, LLC, and EXPERIAN INFORMATION SOLUTIONS, INC.,** | **INJUNCTIVE RELIEF REQUESTED** |
| **Defendants.** | |
| _____ / | |

### CLASS ACTION COMPLAINT

1.      This is a class action brought by Plaintiff, JACQUELYN CRUSE under the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2201, the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (b), 15 U.S.C. § 1692k, 28 U.S.C. §§ 2201-2201 (d), 28 U.S.C. § 1334 (b), and 15 U.S.C. § 1681p.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this class action lawsuit under 28 U.S.C. §1331 and 47 U.S.C. §227. Venue in this District is proper because SLS maintains and conducts business within this District, Experian maintains and does business in this District, and Plaintiff received the unlawful robocalls from SLS within this District, pursuant to FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1391.

## STANDING

3.      Plaintiff has standing to bring her claims against the Defendant pursuant to *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), as she was damaged by the Defendant SLS from its failure to follow the requirements set out by Congress under the TCPA and received robo-calls to her cell phone and received the debt collection communications pursuant to the FCCPA.

4.      Plaintiff also has individual standing under the FCRA to bring her claims as she was damaged by Defendant SLS's and Experian's improper reinvestigations of credit through reduction of her credit score and creditworthiness, among other actual damages.

5.      Plaintiff and the Class' harms are particularized in that the damages from Defendant's conduct affected Plaintiff and the Class personally, in forms such as occupation of their cell phones, cell batteries, and wireless telephone lines.

6.      The occupation of a call recipient's telephone line is a specific injury targeted by the TCPA. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250 (11th Cir. 2015). In *Sarris*, the Eleventh Circuit explained that "[t]he actual or threatened injury required by Art[icle] Ill may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Id. at 1251 (internal quotation omitted). In TCPA cases, the Eleventh Circuit explained that plaintiffs suffer a concrete and particularized injury when their fax machines and electronic trans    mission lines are occupied by others in violation of federal law. *Id.*

7.      Plaintiff and the Class' harms are concrete in that they are cognizable as actual damages under the TCPA, in addition to the statutory damages provided by Congress.

8.      Together, the aforementioned actual and statutory damages produce cognizable damages under Article III both as to the Class harms and Plaintiff's individual damages under the FCRA.

**PARTIES**

9.     Plaintiff is a natural person and a resident of Duval County, Florida.  At all times material hereto, Plaintiff was a "debtor" or "consumer" as defined by Fla. Stat. § 559.55(2), and a "consumer" as defined by 15 U.S.C. § 1681a (c) of the FCRA., and a "person" as defined by 47 U.S.C. §153(39).  Plaintiff has standing to bring a claim under the FCCPA, the Declaratory Judgment Act, TCPA and FCRA because she was directly affected by violations of these Acts, and was subjected to Defendant's illegal and improper debt collection activities.

10.     Defendant SLS is a Delaware corporation specializing in mortgage servicing, based in Highlands Ranch, CO. Defendant will be served through its registered agent, UNITED AGENT GROUP INC. in Palm Beach Gardens, FL.

11.     Defendant SLS is an entity who furnishes information to consumer reporting agencies as provided in the FCRA, 15 U.S.C. § 1681s-2.

12.     Defendant SLS is a "creditor" as it is defined in Fla. Stat. §559.55(5).

13.     Defendant Experian is an Ohio limited liability company with its principal place of  business located at 475 Anton Boulevard, Costa Mesa, California 92626 and is subject to the jurisdiction of this Court.

14.     At all times material Defendant Experian is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

## THE TELEPHONE CONSUMER PROTECTION ACT

15.     In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. §227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices.

16.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of §227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

18.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

19.     The TCPA prohibits the use of any "automatic telephone dialing systems" ("ATDS") to call cellular telephones. It also prohibits the use of artificial or prerecorded messages.

20.     ATDS means any equipment that has the "capacity to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011) (emphasis original).

## **FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

21.     Plaintiff's cellular telephone number at all relevant times was XXX- XXX-7406 and was assigned to a cellular telephone service as specified in 47 U.S.C. §227(b)(1)(A)(iii).

22.     At all times relevant to this complaint, Plaintiff was and is a "person" as defined by the TCPA 47 U.S.C. §153(39).

23.     Plaintiff filed Chapter 13 bankruptcy in May 16, 2014. In the bankruptcy, she included a second mortgage on her home at 235 East 25th Street, in Jacksonville, Florida (the "Debt").[1] ***See Exhibit A, portion of voluntary petition.***

24.     Upon information and belief, Defendant SLS was transferred servicing of the Debt during the Chapter 13 bankruptcy.

25.     Plaintiff completed her Chapter 13 bankruptcy and was discharged on July 3, 2018.

26.     Defendant SLS had notice of this discharge. ***See Notice of Discharge, Exhibit B.***

27.     The Chapter 13 Bankruptcy stripped the Debt as a second mortgage, removing Plaintiff's obligation to pay.

28.     Following the discharge, Defendant SLS began sending billing statements, demanding payment for the Debt. ***See composite Exhibit C.***

29.     These billing statements stated "total amount due" and demanded payment. They also clearly noted that the statement itself was "from a debt collector." ***See Exhibit C.***

30.     Beginning October 2019, Defendant called Plaintiff attempting to collect on the stripped mortgage debt. Plaintiff stated that she was represented by an attorney and provided the attorney's name and telephone number to Defendant to contact and to stop calling her.

---

[1]The 235 East 25th Street residence was listed as a "rental property" on her Chapter 13 bankruptcy petition. However, the home was originally purchased to live in by Plaintiff and she resided there for a period of time prior to  renting it to tenants.

31.     Since October 11, 2019, Plaintiff has been contacted multiple times by Defendant, despite notice of representation and revocation of consent to call. ***See Call Log, attached as Exhibit D.***

32.     On both occasions, Plaintiff repeatedly told Defendant that she was represented by an attorney and told SLS to stop calling.

33.     Defendant continued to place calls to Plaintiff's cellular telephone number using an ATDS and using a robotic or computerized voice message.

34.     Defendant placed calls to Plaintiff's cellular telephone on multiple occasions despite clear revocation and clear representation by an attorney as to the Debt.

35.     It is Defendant's business practice to call the telephone numbers of people who have told Defendant to stop calling.

36.     Defendant knew that it did not have authorization to continue to call Plaintiff on Plaintiff's cellular telephone number using an ATDS as Plaintiff instructed Defendant to stop calling.

37.     When Plaintiff answered the calls from Defendant, she heard a robotic message, which is indicia of an ATDS.

38.     In fact, Defendant has been sued in the past for using an ATDS to call consumer's cellular telephones after revocation and/or notice of representation in this District.

39.     None of the calls that Defendant placed to Plaintiff's cellular telephone number constituted emergency calls as defined by the TCPA.

## FCRA INDIVIDUAL ALLEGATIONS

40.     Following the Chapter 13 bankruptcy, sometime in September 2019, SLS began reporting the discharged Debt as late and owing over $47,000 on Plaintiff's Experian Report.

41.     In response to this, on or about March 14, 2020, Plaintiff submitted a dispute letter (hereinafter "Dispute Letter") via U.S. mail to Experian disputing the reporting of the SLS account. *See attached the* "Dispute Letter" *as **Exhibit E.***

42.     On April 10, 2020, Experian responded to the  Dispute Letter, finding that SLS's information was verified as accurate and updated on Plaintiff's credit report, reflecting not only late payments for the discharged obligation, but also that a foreclosure had begun against Plaintiff. *See attached the* "Experian Response" *as **Exhibit F.***

43.     After receiving Plaintiff's dispute, Experian notified SLS of Plaintiff's dispute of the Debt.

44.     Upon information and belief, SLS was informed of this dispute, failed to conduct a reasonable investigation of such, and verified to Experian  that the disputed information was being reported accurately even though the account is completely inaccurate.

45.     When Plaintiff disputed the account, Defendant Experian was required to perform an reinvestigation; however, Defendant Experian did not properly reinvestigate the dispute and continued to report the erroneous credit information with actual knowledge of errors, in violation of the FCRA.

46.     When Plaintiff disputed the account, Defendant SLS was required to perform a reinvestigation; however, Defendant SLS continued to report the erroneous credit information with actual knowledge of errors, in violation of the FCRA.

47.     As a result of Defendants' actions, Plaintiff has suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion.

48.     As a result of Defendants' inaccurate credit reporting of the Debt on Plaintiff's credit reports, Plaintiff's credit score was reduced and her creditworthiness reputation was damaged considerably.

49.     Defendant SLS in fact had the audacity to include a foreclosure now on Plaintiff's discharged account, thereby harming her credit further.

## CLASS ACTION ALLEGATIONS

50.     This action is brought on behalf of the following Classes:

The TCPA Class:

(1) All persons in the United States (2) to whose cellular telephone numbers called (3) by Defendant, SLS Loan Management Services, LLC who placed non-emergency telephone calls (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where SLS Loan Management Services, LLC had consent revoked to call said cellular telephone numbers.

The FCCPA Class:

(1) All persons in the State of Florida (2) who were sent billing statements similar to those attached as Exhibit C (3) where the debt was discharged in bankruptcy.

51.     The relevant time periods for the Class claims is four years from the date of the complaint for the TCPA class and two years from the date of the complaint for the FCCPA class.

52.     Excluded from the Class are Defendant, its legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned, the Judge's immediate family, and Plaintiff's counsel and their employees. Plaintiff reserves the right to amend the above-stated class definitions based upon facts learned in discovery.

53.     The TCPA Class includes members who received even just a single robocall. Only a single call is needed to trigger the protections of the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(iii)

(applying the statute's prohibitions to any *call*). The call need not even be answered. *See Glasser v. Hilton Grand Vacations Co.,* Case No: 8:16-cv-952-T-27AAS, at *4 (M.D. Fla. Jan. 3, 2017) (holding that plaintiff sufficiently alleged a concrete injury that the TCPA is designed to protect even if the call remained unanswered).

54.     Plaintiff alleges on information and belief based upon the Defendant's use of telephone dialing systems and sheer number of consumers it encounters or communicates with that the TCPA Class are so numerous that joinder of all members is impracticable. There are more than forty (40) individuals in the Class as previously defined herein.

55.     Plaintiff also alleges on information and belief that based upon the number of mortgages and second mortgages Defendant services in the State of Florida, the Class are so numerous that joinder of all members is impracticable. There are more than forty (40) individuals in the FCCPA Class as previously defined herein.

56.     There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

  a.     Whether Defendant's conduct is governed by the TCPA and/or the FCCPA.

  b.     Whether the telephone calls made by Defendant were placed using an ATDS.

  c.     Whether the billing statements sent to Plaintiff and the FCCPA Class similar to ***Exhibit C*** violated the FCCPA.

  d.     Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

e.      Whether Defendant should be enjoined from engaging in such conduct in the future.

57.      Plaintiff's claims are typical of those of the members of the TCPA Class and the FCCPA Class. Within the Classes, all claims are based on the same facts and legal theories. All claims of the Classes and Plaintiff have standing under Article III of the Constitution, with injuries easily traceable to SLS's robocalling and sending of billing statements to discharged debtors.

58.      Plaintiff will fairly and adequately protect the interests of the Class.  She has retained counsel experienced in handling actions involving unlawful practices under the TCPA. FCCPA, and class actions. Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

59.      Certification of each Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.      The questions of law or fact common to the members of the TCPA Class predominate over any questions affecting individual members.

b.      The questions of law or fact common to the members of the FCCPA Class predominate over any questions affecting individual members.

c.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

60.      Certification of the Classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

61.      Plaintiff requests that the TCPA Class be certified under Rule 23(b)(3) for monetary damages, and pursuant to Rule 23(b)(2) for injunctive relief.

62.     Plaintiff requests that the FCCPA Class be certified under Rule 23(b)(3) for monetary damages, and pursuant to Rule 23(b)(2) for injunctive relief.

## COUNT I: NEGLIGENT VIOLATIONS OF THE TCPA
### (TCPA CLASS)

63.     Plaintiff on behalf of herself and all other similarly-situated TCPA class members incorporates the above factual allegations in paragraphs 1 through 62.

64.     Defendant placed non-emergency telephone calls to Plaintiff and the members of the TCPA Class using an automatic telephone dialing system or device that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

65.     The calls were made without the prior express consent of the parties.

66.     The calls were made following revocation of consent by the parties.

67.     The aforesaid calls violate the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

68.     Plaintiff and the TCPA Class were injured with Defendant's occupation of their cell phones, cell batteries, and wireless telephone lines, an unnecessary and irritating inconvenience for Plaintiff and for the consumer class members.

69.     In addition, Plaintiff experienced an invasion of privacy and a waste of time where Defendant SLS had been made aware of her interest in giving up the mortgage through notice of the bankruptcy.

70.     The injuries to Plaintiff and the class members are fairly traced to SLS's own actions in robo-calling and utilizing an automated telephonic dialing system (ATDS). Further, such injuries would be directly benefited by a favorable judgment against SLS, leading SLS to abandon the actions the class complains of and properly offset Plaintiff and the class members for their injuries. The court in this action can redress these injuries.

11

71.     "In terms of particularity, Plaintiff is not required to prove monetary damages under the TCPA." *Ramos v. Ph Homestead, LLC,* 358 F. Supp. 3d 1355, 1362 (S.D. Fla. 2019); *And see Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1252 (11th Cir. 2015) ; 47 U.S.C.A. § 227(b)(3).

72.     WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class, and against Defendant SLS Loan Management Services, LLC for:

> a.  An order certifying this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23;
>
> b.  Statutory damages of $500 dollars per call for negligent violations of the TCPA;
>
> c.  An injunction requiring Defendant to cease all communications in violation of the TCPA; and
>
> d.  Such further relief as this Court may deem appropriate.

## COUNT II: WILLFUL VIOLATION OF THE TCPA
## (TCPA CLASS)

73.     Plaintiff on behalf of herself and all other similarly-situated TCPA class members incorporates the above factual allegations in paragraphs 1 through 62.

74.     Defendant placed non-emergency telephone calls to Plaintiff and the members of the Class using an automatic telephone dialing system or device which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator.

75.     The calls were made without the prior express consent of the parties.

76.     The calls were made not only after clear revocation, but after *multiple* clear revocations.

77.     The aforesaid calls violate the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

78.     Plaintiff and the TCPA Class were injured with SLS's occupation of their cell phones, cell batteries, and wireless telephone lines, an unnecessary and irritating inconvenience for Plaintiff and for the consumer class members.

79.     In addition, Plaintiff experienced an invasion of privacy and a waste of time where SLS had been made aware of her interest in giving up the mortgage through notice of the bankruptcy.

80.     The injuries to Plaintiff and the class members are fairly traced to SLS's own actions in robo-calling and utilizing an automated telephonic dialing system (ATDS). Further, such injuries would be directly benefited by a favorable judgment against SLS, leading SLS to abandon the actions the class complains of and properly offset Plaintiff and the class members for their injuries. The court in this action can redress these injuries.

81.     "In terms of particularity, Plaintiff is not required to prove monetary damages under the TCPA." *Ramos v. Ph Homestead, LLC,* 358 F. Supp. 3d 1355, 1362 (S.D. Fla. 2019); *And see Palm Beach Golf Center-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1252 (11th Cir. 2015) ; 47 U.S.C.A. § 227(b)(3).

82.     WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the Class and against Defendant SLS Loan Management Services, LLC for:

a.   An order certifying this case to proceed as a class action pursuant to Federal Rule of Civil Procedure 23;

b.   Statutory damages of up to $1,500 dollars per call for each willful violation of the TCPA;

d.   An injunction requiring Defendant to cease all communications in violation of the TCPA; and

e.   Such further relief as this Court may deem appropriate.

## COUNT III: VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, FLA. STAT. § 559.55 *et seq.* ("FCCPA")
### (FCCPA CLASS)

83.     Plaintiff, on behalf of herself and all other similarly-situated FCCPA class members, repeats and re-alleges each and every allegation contained in paragraphs 1 through 62 above as if fully set forth herein.

84.     "The Consumer Collection Practices Act is a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." Harris v. Beneficial Finance Co. of Jacksonville, 338 So. 2d 196, 200-01 (Fla. 1976).

85.     At all times material herein, Plaintiff and all FCCPA class members were "debtors" or "consumers" as defined by Fla. Stat. § 559.55(8).

86.     At all times material herein, Plaintiff's debt was a "debt" or "consumer debt" as defined by Fla. Stat. § 559.55(6).

87.     At all times material herein, Defendant was a "person" as referred to under Fla. Stat. § 559.72.

88.     The FCCPA uses the same definitions as the Fair Debt Collection Practices Act (FDCPA) for "consumer", "debt collector", and "debt or consumer debt". Fla. Stat. §§ 559.55(1), (2), and (6).  The FCCPA expressly recognizes its interplay with the FDCPA, stating that "[t]his part is in addition to the requirements and regulations of the federal act", and directs that "[i]n the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." Fla. Stat. §559.552.

89.     Among the FCCPA's enumerated prohibitions, the relevant sections are as follows: Prohibited practices generally. In collecting consumer debts, no person shall:

(7) "… willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

(9) "…, or assert the existence of some other legal right when such person knows that the right does not exist.

Fla. Stat. §559.72(7)(9).

90.     Defendant sent Plaintiff a billing statement which states that she owed a total amount under  the second mortgage. *See Exhibit C.* This debt had been discharged in bankruptcy.

91.     Upon information and belief, Defendant had knowledge of Plaintiff's and the FCCPA class members' debts being discharged when it began servicing the mortgage files.

92.     By demanding payment for a discharged debt, Defendant has violated Fla. Stat. § 559.72(7) and (9) by "willfully engag[ing] in other conduct which can reasonably be expected to abuse or harass" the Plaintiff and the FCCPA Class and also "…, or assert the existence of some other legal right when such person knows that the right does not exist."

93.     For purposes of the claims brought in this action, the applicable standard under the FCCPA is "the least sophisticated" consumer test.  *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985); *see also* Fla. Stat. § 559.552 (the FCCPA looks to the FDCPA for guidance).

94.     As a direct and proximate result of Defendant's FCCPA violations, Plaintiff and the FCCPA class have been harmed.

95.     Plaintiff and the FCCPA class are entitled to statutory damages of $1,000 per individual and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

96.     Because Defendant's actions were intentional, willful and/or without regard for Plaintiff's rights, Plaintiff reserves the right to seek punitive damages upon the showing of the records of evidence sufficient to form the basis of a claim for punitive damages.

WHEREFORE, Plaintiff prays that the Court enter an Order:

a. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as FCCPA Class Representative, and appointing the undersigned Counsel to act as Class Counsel;

b. Adjudging that Defendant violated the FCCPA, Fla. Stat. § 559.72(7) - (9), and awarding Plaintiff and the FCCPA Class actual damages in the form of money paid to Defendant on discharged debts and statutory damages pursuant to Florida Statutes § 559.77(2);

c. Permanently enjoining Defendant from sending billing statements similar to *Exhibit C* in the manner described in this lawsuit;

d. Permanently enjoining Defendant from threatening Plaintiff and the FCCPA classes in the manner described in this lawsuit;

e. Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to Florida Statutes § 559.77(2) and 15 U.S.C. § 1692k(a)(3).;

f. Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

g. Awarding such other and further relief as the Court may deem just and proper.

### COUNT IV: CLAIMS AGAINST DEFENDANT EXPERIAN FOR VIOLATIONS OF THE FCRA 15 U.S.C. § 1681 *et seq.*
### ((FCRA Individual Claim)

97. Plaintiff incorporates Paragraphs 1 – 39 and 40-49 and above as fully stated herein.

98. Defendant Experian willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

99.     Defendant Experian willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report.

100.    Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681e (b).

101.    Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

102.    Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

103.    Defendant Experian negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

104.    Defendant Experian willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

105.    In response to the request for reinvestigation, Defendant Experian improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

106.    Defendant Experian has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i, 1681(n) and/or 1681(o).

107.    Defendant Experian's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

108.    Defendant Experian's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant Experian is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

109.    Additionally, the court may award punitive damages under 15 U.S.C. § 1681n. Plaintiff will seek to amend the Complaint to seek same if discovery shows punitive damages may be proper.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant Experian:

a)    For actual damages;

b)    For compensatory damages;

c)    For statutory damages;

d)    For attorney's fees and costs incurred in this action;

e)    For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and;

f)    For such other and further relief as the Court may deem just and proper.

## COUNT V: CLAIMS AGAINST DEFENDANT SLS FOR VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681 *et seq.*
### (FCRA Individual Claim)

110.    Plaintiff incorporates Paragraphs 1 – 39 and 40-49 and above as fully stated herein.

111.    Defendant SLS has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. § 1681s-2(b).

112.    Specifically, SLS violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of disputed information, by failing to review all relevant information provided by the consumer reporting agency, by failing to review Plaintiff's prior dispute letters and its own entire file as part of such investigation, by failing to accurately communicate the results

of its investigation to the consumer reporting agencies, by verifying inaccurate or incomplete information to a consumer reporting agency as part of a reinvestigation of such information disputed by Plaintiff and/or by verifying and continuing to report inaccurate information after notice and confirmation of those errors.

113.    Further, SLS violated 15 U.S.C. § 1681s-2(b) by failing to promptly modify, delete or permanently block information disputed by Plaintiff which it knew or reasonably should have known was inaccurate, fraudulent, obsolete and/or incomplete.

114.    Following the reinvestigation and dispatch of direct notice to SLS, who failed to notify the consumer reporting agencies to whom it reported credit information that the debts were disputed, in violation of the FCRA, 15 U.S.C. §§ 1681s-2(b) the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(3).

115.    SLS's reinvestigation was not conducted in good faith.

116.    SLS's reinvestigation was not conducted reasonably.

117.    SLS's reinvestigation was not conducted using all information reasonably available to SLS.

118.    SLS's reinvestigation was *per se* deficient by reason of these failures in its reinvestigation of the trade line on Plaintiff's consumer report.

119.    SLS's actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles Plaintiff to actual damages enumerated in 15 U.S.C. § 1681o and/or 15 U.S.C. § 1681n.

120.    As a result of SLS's conduct, actions, and inactions, Plaintiff has suffered emotional distress, humiliation, mental anguish and damages to her creditworthiness.

121.    SLS's conduct, action and inaction is willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

122.    Plaintiff is entitled to recover costs and attorney fees from Defendant SPECIALIZED LOAN SERVICING, LLC in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against SPECIALIZED LOAN SERVICING, LLC.:

a)    For actual damages;

b)    For compensatory damages;

c)    For statutory damages;

d)    For punitive damages;

e)    For attorney's fees and costs incurred in this action;

f)    For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and

g)    For such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues herein.

Respectfully submitted this 20th of May, 2020.

/s/ Austin J. Griffin, Esq.
Max Story (Fl. Bar No. 0527238)
Austin J. Griffin (Fl. Bar No. 117740)

Max Story PA
328 2nd Avenue North
Jacksonville Beach, Florida 32250
(904) 372-4109
(904) 758-5333
max@storylawgroup.com
austin@storylawgroup.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the forgoing was electronically filed with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record, this 20th of May, 2020.

/s/ Austin J. Griffin, Esq.
Florida Bar:  117740