UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JACQUELYN CRUSE, individually and on
Behalf of all others similarly situated,

       Plaintiff,

vs.                                   CASE NO.: 3:20-cv-506-MMH-JBT

SPECIALIZED LOAN SERVICING LLC, and
EXPERIAN INFORMATION SOLUTIONS, INC.,

       Defendants.

_____/

**DEFENDANT SPECIALIZED LOAN SERVICING
LLC'S MOTION TO DISMISS COUNTS I – V AND VII OF THE
AMENDED COMPLAINT AND TO STRIKE REQUESTS FOR PUNITIVE DAMAGES**

Defendant, SPECIALIZED LOAN SERVICING LLC ("SLS"), by and through its undersigned counsel, hereby moves this Court to dismiss Counts I – V and VII of the Amended Complaint[1] filed by JACQUELYN CRUSE ("Plaintiff") for failing to state a cause of action under Rule 12(b)(6), Federal Rules of Civil Procedure, and in support thereof states as follows:

**I.  PRELIMINARY STATEMENT & FACTUAL BACKGROUND**

Counts I - V of the Amended Complaint allege SLS violated the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq.* (the "FCCPA"), and the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), by sending "billing statements" and a hazard insurance letter to Plaintiff following her bankruptcy discharge.  Count VII of the

---

[1] Plaintiff first filed an Amended Complaint, with leave to amend, on November 3, 2020. Dkt. 33. That version of the Amended Complaint was apparently filed in error. On November 13, 2020, Plaintiff filed a different version of the Amended Complaint despite not seeking leave of court, which SLS addresses in this Motion to Dismiss.

Amended Complaint alleges that SLS violated section 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA").  For the reasons set forth below, these counts should be dismissed.

On or about May 22, 1990, Plaintiff purchased real property at 235 E. 25th Street, Jacksonville, FL 32206 (the "Subject Rental Property").  Plaintiff admittedly used this property as "rental property" after she moved out of the home.  Am. Compl., Dkt. 35 at ¶ 13.  Plaintiff took out several secured loans against the Subject Rental Property, one of which was serviced by SLS. Am. Compl., Dkt. 35 at ¶ 19.

The secured loan on the Subject Rental Property that is central to this dispute was taken out nearly fourteen years after Plaintiff purchased the Subject Rental Property and while the Subject Rental Property was being used as rental property.  On December 9, 2004, Plaintiff obtained a loan which was secured by the Subject Rental Property in favor of Bank of America, N.A.  *See* Mortgage and Equity Maximizer Agreement (collectively the "Loan Documents") attached hereto as **Composite Exhibit "A"**.[2]  It is plainly evident on the face of the Loan Documents that Plaintiff  indicates she resides at a location different from the Subject Rental Property.  *See* Exhibit A at p. 12.  More specifically, the Mortgage provides, "THIS MORTGAGE dated December 9, 2004, is made and executed between JACQUELYN P CRUSE, AN UNMARRIED PERSON, WHOSE ADDRESS IS 1567 FLORIDA AVENUES, JACKSONVILLE, FL 32206. . ." *id.*  (emphasis in original).  Thus, at the time of obtaining the loan on the Subject Rental Property, Plaintiff indicated that she was not currently residing at the Subject Rental Property and was instead using 1567 Florida Avenue, Jacksonville, Florida 32206 as her personal address.

---

[2] The underlying Mortgage, as part of the Loan Documents, was recorded on January 11, 2005, at Book 12233 and Page 698 in the Official Records of Duval County, Florida.  The Court is permitted to take judicial notice of the Mortgage and consider it on a Motion to Dismiss.

Nearly a decade later, on May 16, 2014, Plaintiff filed for bankruptcy under Chapter 13. Am. Compl., Dkt. 35 at ¶ 13; *See also* Case No. 14-02423-3G3 (Bankr. M.D. Fla. 2014).   As discussed further below, the central component to Plaintiff's cause of action is that she received a bankruptcy discharge on July 3, 2018.   Am. Compl., Dkt. 35 at ¶ 15.   Plaintiff surrendered the Subject Rental Property in her First Modified Chapter 13 Plan (the "Chapter 13 Plan").   Am. Compl., Dkt. 35 at ¶ 14.

On November 13, 2020, Plaintiff filed her Amended Complaint against SLS, and others, alleging that SLS violated the FCCPA, FDCPA, and FCRA.   *See* Am. Compl, Dkt. 35 at ¶¶ 56-121; 135-147.   Plaintiff claims that SLS attempted to collect on a debt which it knew it had no right to collect, and that SLS harassed Plaintiff in an effort to collect that debt.   Am. Compl., Dkt. 35 at ¶¶ 65, 79, 92, 107, 120.   The Court should dismiss Plaintiff's Amended Complaint as to all FCCPA and FDCPA claims for several reasons. First, the amounts owed to SLS do not constitute a "debt" within the meaning of the FCCPA or FDCPA.   As set forth in detail below, the monies owed must constitute a debt as defined by the FCCPA or FDCPA, which only contemplate debts that are "primarily for personal, family, or household purposes."   *See* § 559.55(6), Fla. Stat.; 15 U.S.C. 1692a(5).   Loans which are secured by rental property, as in this case, do not constitute debt for purposes of the FCCPA or FDCPA.

Second, even if the Court considers Plaintiff's loan to be a debt primarily for personal, family or household purposes, Plaintiff's FCCPA and FDCPA allegations pertaining to the purportedly harassing nature of SLS's written correspondence with the Plaintiff fail as a matter of law.   Nothing in the written correspondence attached to and relied upon in the Amended Complaint rise to a level that can possibly be deemed harassing.

Finally, Plaintiff's FCCPA and FDCPA allegations also fail as a matter of law because a loan servicer has a right to send information to a borrower following a bankruptcy when the lien remains on the subject real estate. This is because the borrower needs the information contained in the correspondence in case the borrower wants to make voluntary payments to ensure that the lien is not foreclosed. Informational notices are not considered attempts to collect a debt subject to the FCCPA and FDCPA. As such, SLS requests that this Court dismiss Counts I - V of Plaintiff's Amended Complaint with prejudice.

With regards to Plaintiff's FCRA claims, they similarly fail and should be dismissed. The credit report attached to the Amended Complaint as Exhibit E does not list SLS as a creditor reporting any information at all, let alone negative information. *See* Dkt. 35-5. Despite Plaintiff's self-serving allegations, the exhibits to the Amended Complaint control and do not support a cause of action under the FCRA.

## II.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a claimant to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To avoid dismissal under Rule 12(b)(6), the factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. "While a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id*. at 555. And a court must dismiss a cause of action when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992

F.2d 1171, 1174 (11th Cir. 1993).

"[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]hen the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (per curiam) (alteration in original) (quoting *Day*, 400 F.3d at 1276). "In this context, 'undisputed' means the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276.

Here, the underlying Loan Documents, in particular the Mortgage, as a publicly recorded document, are central to Plaintiff's Amended Complaint. The FCCPA and FDCPA only prohibit conduct taken in relation to a collection of a "debt," as defined within the statute. *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir. 2016). Under the FCCPA and FDCPA a "debt" or "consumer debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(1); 15 U.S.C. § 1692a(5); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 (11th Cir. 2010).

It is axiomatic, then, that to determine whether a cause of action exists under the FCCPA

or FDCPA the Court must first consider facts relating to the very nature of the debt. Here, it is essential to consider the nature of the underlying debt by examining the Loan Documents. Therefore, the Court should consider the Loan Documents attached to this Motion to Dismiss as Exhibit A as they are essential to Plaintiff's Amended Complaint. Moreover, the authenticity of the documents is undisputed. Plaintiff mentions the Loan Documents, specifically the Mortgage, multiple times in the Amended Complaint. *See* Am. Compl., Dkt. 35, at ¶¶ 13, 15, 17, 19, 20, 90.

Accordingly, this Court should consider the Loan Documents for purposes of this Motion to Dismiss as they are central to Plaintiff's claims and are not subject to dispute. Additionally, this Court may also take judicial notice of the publicly recorded documents attached to this Motion to Dismiss. The documents attached to the Motion to Dismiss are either recorded in the official records of Duval County, Florida, or are part of recorded legal proceedings in the Bankruptcy Court. As such, they are capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Springer v. Wells Fargo Bank, N.A.*, 784 F. App'x 721, 726 (11th Cir. 2019) (holding a magistrate judge did not abuse his discretion by taking judicial notice of public records, including a mortgage, foreclosure documents, and tax records); *Colon v. Nationstar Mortg., LLC*, No. 1:15-CV-22961-UU, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) (stating "For purposes of this Motion [to Dismiss], the Court takes judicial notice under Fed. R. Evid. 201 of the Assignment and the facts in the Mortgage related to the notice and cure provision"); *Correa v. BAC Home Loans Servicing LP*, 2012 WL 1176701, at *4 (M.D. Fla. Apr. 9, 2012) (taking judicial notice of a recorded mortgage for purposes of deciding a motion to dismiss).

### III.  ARGUMENT

In Counts I - V, Plaintiff claims that SLS violated the FCCPA by demanding payment for a discharged debt, giving rise to violations of Sections 559.72(7) and 559.72(9), Florida Statutes. Am. Compl., Dkt. 35 at ¶¶ 65, 79, 92.  Plaintiff alleges that SLS sent billing statements and a hazard insurance letter, which purportedly was an effort to collect the discharged debt.  Am. Compl., Dkt. 35 at ¶¶ 63, 77, 90.  Similarly, in Count IV and V, Plaintiff claims that SLS violated the FDCPA by attempting to collect a discharged debt in violation of Sections 1692e(2)(A) and 1692d.

As explained *infra*, Plaintiff's claims should be dismissed because Plaintiff cannot satisfy the threshold requirement that her loan obligations constitute a "debt," as defined by the FCCPA and FDCPA because the loan was associated with Plaintiff's rental property and was not obatined primarily for personal, family or household purposes.  However, even if the Court determines that Plaintiff's debt was primarily for personal, family or household purposes, then such claims should still be dismissed because they are preempted by the Bankruptcy Code.  *See* 11 U.S.C. § 524(j). *See Prindle v. Carrington Mortgage Services, LLC*, Case No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *4 (M.D. Fla. 2016).  Similarly, should the Subject Rental Property be considered Plaintiff's primary place of residence, then the anti-modification provision of the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), would apply.  However, Plaintiff scheduled the Subject Rental Property as exactly that, rental property, and therefore neither SLS nor its predecessors in interest could avail themselves to the protections of the anti-modification provision.

Should the Court determine that the debt does satisfy the FCCPA and FDCPA requirements of having been obtained primarily for personal, family or household purposes and that they are not then preempted by the Bankruptcy Code, Plaintiff's FCCPA and FDCPA counts are still subject

to dismissal.  First, the mere sending of a billing statement does not consitute harrassment, which renders the alleged violations of Fla. Stat. § 559.72(7) and Section 1692d unsustainable as merely sending an informational statement falls well short of harassing conduct.  Second, Plaintiff's claims fail as a matter of law because a loan servicer is permitted to send information to a borrower following a bankruptcy when the lien remains on the subject real property as the borrower needs the information contained in the mortgage statement should the borrower desire to make voluntary payments to ensure that the lien is not foreclosed. Specifically as to the hazard insurance letter, SLS is required to send the letter by federal regulations and should not be held liable under the FCCPA and/or FDCPA for complying with federal regulations.

### A. Plaintiff's FCCPA and FDCPA claims should be dismissed because the underlying loan does not constitute a consumer debt.

Because not all obligations to pay are considered debts under the FCCPA and FDCPA, a threshold issue is whether or not the dispute involves a "debt" within the meaning of the statutes. In this instant action, the Loan Documents reveal that the debt at issue relates to a mortgage taken out on an investment property.  Plaintiff did not reside in the property at the time she obtained the Mortgage and was using it was an investment, rental property.  *See* Exhibit A, indicating her personal address was not 235 East 25th Street, Jacksonville, Florida.  As such, Plaintiff cannot satisfy the threshold issue for FCCPA or FDCPA liability – that there was an attempt to collect a "debt." The FDCPA and the FCCPA identically define "debt" as:

> any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1); *See Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 837 (11th Cir. 2010).[3]  It is well settled that in order to bring a claim under the FDCPA or the FCCPA, there must be an initial showing that the money being collected constitutes a debt, as defined by each statute. *Id*. at 836-837.

In order for there to be liability under the FCCPA (and also the FDCPA), a plaintiff must demonstrate that the underlying property giving rise to the debt relates to personal, family, or household purposes and is not being used as an investment property.  *Fischer v. Fed. Nat. Mortg. Assoc.*, 302 F. Supp. 3d 1327, 1331 (S.D. Fla. 2018).  A debt may not arise from a business or investment purpose.  *Id*.  To determine whether a debt is incurred for business purposes or personal, family, or household purposes, courts look to the time at which the debt is created.  *Id*.; citing *Booth v. Mee, Mee & Hoge, P.L.L.C.*, Case No. 07-cv-1360, 2010 WL 988473, *4 (W.D. Okla. Mar. 15, 2010).

"Many courts have found that the FDCPA does not apply to debts associated with investment properties because the debt was not incurred for '*personal, family, or household purposes*.'" *Fischer*, 302 F. Supp. 3d at 1331 (rejecting the argument that  a rental property was a "debt"); *Kristyn Epps v. Fair Collections & Outsourcing, Inc.,* No. 7:20-CV-00176, 2020 WL 4587527 (W.D. Va. Aug. 10, 2020) (citing *Fischer* and granting motion to dismiss FCDPA claim where Plaintiff alleged she did not reside at the address in question); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n,* No. CV 18-2073 PA, 2018 WL 4297480 (C.D. Cal. Sept. 7, 2018) (dismissing FDCPA claim where property at issue was a rental property); *Humphrey v. PennyMac Holdings, LLC*, No. CV153622KMMAH, 2017 WL 3184467, at *4 (D.N.J. July 26, 2017)

---

[3] The FDCPA is the federal counterpart to the FCCPA. The FCCPA requires that in construing the FCCPA, the court must give "due consideration and great weight" to the interpretations of the Federal Trade Commission and the federal courts interpreting the FDCPA.  §559.77(5), Fla. Stat.

quoting *Akinfaderin–Abua v. Dimaiolo*, No. 13–CV–3451 CCC, 2014 WL 345690, at *3 (D.N.J. Jan. 30, 2014); *Klahn v. Clackamas Cnty. Bank*, No. 3:13–CV–621, 2013 WL 3834709, at *4 (D. Or. July 24, 2013) (finding that "a debt associated with rental properties or for investment purposes is not considered a consumer debt under the FDCPA"); *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011) (finding debt at issue "falls outside of the FDCPA" because it "relates to a mortgage taken out on an investment property"); *Herschelman v. New Century Mortg. Corp.*, No. 0–00461, 2010 WL 4448224, at *4–5 (D. Haw. Oct. 29, 2010) (finding that FDCPA does not apply to the property plaintiff owns and rents out to tenants); *Kitamura v. AOAO of Lihue Townhouse*, Civil No. 12-353 LEK-BMK, 2013 WL 1398059, at *5 (D. Haw. Mar. 29, 2013) ("[I]nsofar as the subject of the judicial and non-judicial foreclosures was a rental property, any related collection efforts are not actionable under the FDCPA with respect to any of the named Plaintiffs. Here, the evidence shows that the property was not used primarily for personal, family, or household purposes. Plaintiffs did not use the property as a primary residence, but intended for the property's rental income to provide a source of funding for personal expenses.").

In *Ham v. Nationstar Mortgage, LLC*, Case No. 3:15-cv-939-J-39JBT, 2016 WL 11578643 (M.D. Fla. 2016), *report and recommendation adopted,* a borrower filed suit against Nationstar Mortgage, LLC alleging violations of the FDCPA and FCCPA.  In review of the FDCPA and FCCPA allegations, this Court noted the threshold requirement that a collection activity must relate to a consumer debt.  *Id*. at *6.  This Court noted that the borrower referred to the property in connection with the transaction as being rental property.  *Id*.  "Therefore, it appears that [p]laintiff's mortgage debt is associated with rental property."  *Id*.  Ultimately, this Court dismissed the complaint and further advised of the potential consequences of violating Fed. R. Civ. P. 11. *Id*.

Here, Plaintiff clearly did not reside at the Subject Rental Property when she obtained the loan.  As is clear from the Mortgage, Plaintiff represented at the time she obtained the Mortgage that her current address at the time was different than the Subject Rental Property.  *See* Mortgage at Exhibit A indicating Plaintiff's address was 1567 Florida Avenue, Jacksonville, Florida 32206.  Notably, this address is *not* the address of the Subject Rental Property about which SLS communicated with Plaintiff.  Plaintiff herself acknowledges in the Amended Complaint and her Chapter 13 bankruptcy petition that the Subject Property was rental property.  Am. Compl, Dkt. 55 at ¶ 13.  The inquiry is not whether she intended to reside in the property at the time she purchased it; rather, the critical inquiry is whether *at the time she executed the Loan Documents* she intended to reside in the property or was using it as a rental property.  The allegations of Plaintiff's Amended Complaint confirm that Plaintiff has used this property as rental property and do not indicate that it was her primary residence.  Instead, the Loan Documents, which this Court may consider on this Motion to Dismiss, indicate that Plaintiff's primary address was indeed not the Subject Rental Property.

Moreover, Plaintiff's Amended Complaint does not allege any facts supporting that the underlying loan is a "consumer debt" as defined by the FCCPA and FDCPA.  Instead, Plaintiff merely makes the legal conclusion that the amounts owed pursuant to the Loan Documents constitute a consumer debt under the FDCPA.  A legal conclusion, however, is insufficient.  *See Sayeed*, 2018 WL 4297480 at *2-3; *Epps,* 2020 WL 4587527 at *2-3.  The Amended Complaint is bereft of any facts to support the claim that the purported collection efforts relate to a "debt" or "consumer debt."

**B. Plaintiff's FCCPA and FDCPA claims under Fla. Stat. § 559.72(7) and 15 U.S.C. § 1692d should be dismissed because the mailings sent by SLS do not constitute harassing conduct.**

Even if this Court were to determine that there are sufficient allegations plead to conclude that the obligations to pay should be considered a "debt" within the definition of the FCCPA and FDCPA, Plaintiff is unable to claim that sending the billing statement was a violation of Section 559.72(7), Fla. Stat., and 15 U.S.C. § 1692d which prohibit harassing conduct in an effort to collect a debt.  Plaintiff's Amended Complaint should unquestionably be dismissed as it does not contain allegations sufficient to state a claim of harassment under Section 559.72(7), Fla. Stat. and 15 U.S.C. § 1692d.

When reviewing claims under Section 1692d of the FDCPA, which is substantially similar to Section 559.72(7), Fla. Stat., the Eleventh Circuit views harassing conduct from the perspective of a consumer whose situation makes the consumer more susceptible to harassment or abuse.  *Jeter v. Credit Bureau, Inc.*, 760 F. 2d 1168, 1179 (11th Cir. 1985).  There are several factors to be considered in the assessment of whether alleged conduct gives rise to harassment for purposes of a FDCPA or FCCPA claim:

> (1) the volume and frequency of attempts to contact the debtor, (2) the volume and frequency of contacts with the debtor, (3) the duration of the debt collector's attempted communication and collection, (4) the debt collector's use of abusive language, (5) the medium of the debt collector's communication, (6) the debtor's disputing the debt or the amount due, (7) the debtor's demanding a cessation of the communication, (8) the debt collector's leaving a message, (9) the debt collector's calling at an unreasonable hour, (10) the debt collector's calling the debtor at work, (11) the debt collector's threatening the debtor, (12) the debt collector's lying to the debtor, (13) the debt collector's impersonating an attorney or a public official, (14) the debt collector's contacting a friend, co-worker, employee, employer, or family member, and (15) the debt collector's simulating or threatening legal process.

12

*Valle v. National Recovery Agency*, Case No. 8:10-cv-2775-T-23MAP, 2012 WL 1831156, at *1 (M.D. Fla. May 18, 2012) (dismissing case where debt collector made eighty-two calls occurring at a rate of one every three days and made calls to home and work numbers).

In a comparable case, a mortgage servicer prevailed, in part, on its motion to dismiss claims based on sending post-discharge billing statements in violation of Section 559.72(7), Fla. Stat. and its FDCPA counterpart, Section 1692d. *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294 (M.D. Fla. 2016). In *Leahy-Fernandez*, the plaintiff filed for Chapter 13 bankruptcy. *Id*. at 1298. The plaintiff surrendered the mortgaged property and completed her Chapter 13 plan. *Id*. Accordingly, the debt was discharged. *Id*. Following the discharge, the mortgage servicer continued sending billing statements indicating a delinquency. *Id*. at 1299. Upon review of the fifteen factors, the court determined that the billing statements did not constitute harassment as a matter of law. *Id*. at 1304-05. The court specifically noted the minimal amount of mailings, the absence of contact with the plaintiff's friends, co-workers, or family members, and the lack of any abusive or threatening language. *Id*.

Here, Plaintiff references billing statements and a hazard insurance letter in the Amended Complaint. The sending of billing statements does not constitute harassing conduct barred by the FCCPA and FDCPA.[4] Neither the billing statement nor hazard insurance letter were sent through

---

[4] On facts more egregious and more indicative of harassment, oppression or abuse, courts have routinely dismissed FDCPA and FCCPA cases in favor of the debt collector. *See e.g., Tucker v. CBE Group, Inc.,* 710 F. Supp. 2d 1301 (M.D. Fla. 2010) (Adams, J.) (finding in favor of debt collector where it called plaintiff fifty-seven times, often calling seven times per day, and leaving six identical voice messages); *Waite v. Fin. Recovery Servs., Inc.,* No. 8:09-cv-2336, 2010 WL 5209350 (M.D. Fla. Dec. 16, 2010) (Covington, J.) (dismissing case where the debt collector during nine months called 132 times, often calling four times per day); *Druschel v. CCB Credit Servs., Inc.,* No. 8:10-cv-838, 2011 WL 2681637 (M.D. Fla. June 14, 2011) (McCoun, M.J.) (recommending summary judgment although the debt collector called the debtor fourteen times during two weeks), adopted by 2011 WL 2681953 (M.D. Fla. July 11, 2011); *Carman v. CBE Group, Inc.,* 782 F. Supp. 2d 1223 (D. Kan. 2011) (Robinson, J.) (dismissing case although the

intrusive means, contained any abusive or threatening language, or sent to family members, co-workers, employers, or friends of Plaintiff.  The allegations in the Amended Complaint fail to come close to asserting harassing conduct that would constitute a viable claim under Section 559.72(7), Fla. Stat or Section 1692d.  As such, Plaintiff's Complaint as to Section 559.72(7), Fla. Stat., and Section 1692d should be dismissed.

### C. Plaintiff's FCCPA and FDCPA claims should be dismissed because SLS did not attempt to collect a debt it was not entitled to collect.

Plaintiff's FCCPA and FDCPA claims should be dismissed because SLS permissibly sent correspondence to the Plaintiff for informational purposes only.  Plaintiff's Amended Complaint alleges that SLS had knowledge of Plaintiff's bankruptcy discharge.  Dkt. 35, ¶ 19.  However, as stated previously, the Mortgage remained enforceable *in rem*, thus justifying SLS providing Plaintiff information regarding the Subject Rental Property and the Mortgage secured by it.  By providing information relating to the Mortgage, Plaintiff is provided an accurate picture of what amounts are owed to obviate SLS's need to secure *in rem* relief through foreclosing its interest in the property.

### 1. Neither the billings statements nor the hazard insurance letter constitute an attempt to collect a debt because they were sent for informational purposes.

The FCCPA and FDCPA apply to attempts to collect a consumer debt where the party seeking to collect a debt knew that the legal right to collect the debt did not exist.  *Helman v. Bank of America*, 685 Fed. Appx. 723, 727 (11th Cir. 2017).  Not all communications constitute debt

---

debt collector called the debtor 149 times during two months); *Pugliese v. Prof. Recovery Serv., Inc.,* No. 09-12262, 2010 U.S. Dist. Lexis 64111 (E.D. Mich. June 29, 2010) (Edmunds, J.) (ruling against Plaintiff although the debt collector called 350 times during eight months); *Katz v. Capital One,* No. 09-10096, 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (Edmunds, J.) (granting summary judgment although the debt collector called fifteen to seventeen times after receipt of a cease and desist letter disputing the debt).

collection attempts.  *Nordwall v. PNC Mortg.*, No. 2:14-cv-747-FTM-CM, 2015 WL 4095350, *4 (M.D. Fla. July 7, 2015).  To state a plausible claim, the communication must relate to the collection of a debt.  *Id*.  When communication is informational rather than a demand for payment, the communication does not violate the FDPCA.  *Id*.; *See also Green v. Specialized Loan Servicing LLC*, 766 Fed. Appx. 777, 784-785 (11th Cir. 2019) (finding billing statements from Specialized Loan Servicing LLC do not constitute unlawful debt collection communication); *Wood v. Citibank, N.A.*, No. 8:14-cv-2819-T-27EAJ, 2015 WL 3561494, at *3 (M.D. Fla. June 5, 2015); *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1282 (M.D. Fla. 2015) (granting motion to dismiss, in part, because hazard insurance letter was informational in nature and not an attempt to collect a debt); *Mohr v. Newrez, LLC*, 448 F. Supp. 3d 956, 963 (N.D. Ind. 2020) (stating "the few courts across the country that have considered whether hazard insurance letters are communications 'in connection with the collection of any debt' have almost uniformly determined that they are not.") (citations omitted).

Creditors are permitted to send informational notices to debtors following a discharge in bankruptcy consistent with 11 U.S.C. § 524.  *Helman*, 685 Fed. Appx. at 727-728.  The determination as to whether an attempt was made to collect a discharged debt is viewed from the perspective of the least sophisticated consumer.  *Id*. at 727.  Under the least sophisticated consumer standard, it is presumed that the consumer has a rudimentary amount of information about the world coupled with a willingness to examine collection notices with some care.  *Id*.  The aim is to protect naïve consumers while preventing liability for "idiosyncratic interpretations of collection notices. *Id*.

In *Helman*, the Eleventh Circuit analyzed an FCCPA claim brought under § 559.72(9).  At issue in *Helman* were periodic mortgage statements, which each contained disclaimers relating to

the borrower's bankruptcy.  *Id*. at 728.[5]  In its review, the Eleventh Circuit pointed out that even if the disclaimer language appearing on the statements was ambiguous or unclear, the language in the mortgage statement was "far from the only available source of information."  *Id*.  It also noted that the bankruptcy discharge order informed her that while collecting a discharged debt is disallowed, a creditor may have the right to enforce a valid lien, including a mortgage, after the bankruptcy.  *Id*. at 727.  Even the least sophisticated consumer in the borrower's position would have the knowledge that "she had been through the bankruptcy process and received a discharge; that she had no personal liability on the home mortgage; and that the debt had been discharged but that the bank could still enforce its mortgage."  *Id*.  For the borrower to believe that she was personally liable for the debt, she would have had to overlook the bankruptcy disclaimer language in the statements, and further determine that everything else she had been told did not apply to her.  *Id*.  The Eleventh Circuit states that reaching such a conclusion based on potentially ambiguous language in the mortgage statement would have to "override a series of clear and unambiguous communications to the contrary…exactly the type of 'bizarre or idiosyncratic interpretation of collection notices' to which we have refused to give protection *even under the least sophisticated consumer standard*."  *Id*. at 729 (emphasis added).  Accordingly, the Eleventh Circuit affirmed the district court's decision to dismiss the borrower's claim following a motion to dismiss.  *Id*.

---

[5] Plaintiff cites *Prindle v. Carrington Mortgage Services, LLC*, Case No. 3:13-cv-01349-MMH-PDB (M.D. Fla. Aug. 16, 2016) for the proposition that "if, then" disclosures have been labeled as confusing to the least sophisticated consumer.  Notably, however, this Court rendered its opinion in *Prindle* prior to the Eleventh Circuit's decision in *Helman*.  Further, in a similar analysis, the Eleventh Circuit has found that "if, then" bankruptcy disclaimers are sufficient to apprise a discharged debtor that the information found elsewhere in the correspondence is for informational purposes only, even where the correspondence includes an amount due and a due date. *See In re Roth*, 935 F. 3d 1270, 1276 (11th Cir. 2019) (reviewing bankruptcy disclaimer language for purposes of determining alleged violation of discharge injunction).

Here, the billing statement attached to Plaintiff's Complaint similarly contains a bankruptcy disclaimer in bold-face print.   Specifically, the bankruptcy disclaimer in SLS's statements provide:

> BANKRUPTCY NOTICE – IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY SECTION OF 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

*See* Dkt. 35-2.  Although very similar, the minor difference between the bankruptcy disclaimer in *Helman* and the bankruptcy disclaimer in SLS's statement is that SLS's statement states "*if*…you are a consumer who has received a bankruptcy discharge of this debt…" (emphasis added). However, as *Helman* makes clear, that is not the end of the inquiry.  This Court should look to other factors.  Critically, the borrower is obviously aware that she not only went through the bankruptcy process, but is also well aware that the debt has been discharged.  *See* Dkt. 35-4 (dispute letter from Plaintiff to Experian stating "I received my discharge in 2014").  Moreover, Plaintiff received an Order of Discharge dated July 3, 2018 that explicitly sets forth that while the debt has been discharged "a creditor may have the right to foreclose a home mortgage."  Dkt. 35 at ¶ 15; **Order of Discharge attached as Exhibit B**.

In light of *Helman*, to the extent that any ambiguity that may be gleaned from the bankruptcy disclaimer, Plaintiff would necessarily have to ignore all other factors in order to believe that SLS's statements are seeking to collect a debt against her. Having gone through the bankruptcy process, received the order of discharge, and writing to Experian in a dispute about the discharge in an effort to correct the allegedly improper credit reporting, Plaintiff unquestionably has knowledge that she is not personally responsible for the debt. On one hand, Plaintiff asks this Court to believe that she buried her head in the sand and was unaware of the bankruptcy discharge, and on the other hand asks this Court to find liability under the FCRA because SLS allegedly failed to properly report her bankruptcy discharge. These two positions are at odds with one another.

With regards to the hazard insurance letter attached to the Amended Complaint, a plain reading of the letter indicates that it was sent to merely advise Plaintiff that SLS needed updated information. There are no threats and no immediacy regarding any payment. The only reference to payment is advisory in nature, as it provides that SLS is entitled to be repaid for insurance coverage that it expends on the property. Notably, the subject line in the letter states "Please update insurance information." The letter is simply a request for updated information and provides that, in the event that no updated information is provided, SLS will come out of pocket to provide the necessary insurance coverage. Moreover, there is no payment amount referenced in the letter or even information on how to make a payment should Plaintiff want to. The only information requested or sought relates strictly to insurance coverage.

SLS's billing statements and hazard insurance letter were sent for informational purposes in the event that Plaintiff wished to keep the Subject Rental Property from foreclosure. Moreover, in the event that Plaintiff desired to sell the property, the informational statements would prove necessary as the Mortgage would need to be paid in order for the purchaser to obtain clear title.

Because there are no debt collection efforts, Plaintiff's FCCPA and FDCPA claims should be dismissed with prejudice.

2.  <u>SLS was required to send the hazard insurance letter pursuant to the federal regulations</u>.

SLS is obligated to send informational notices to borrowers relating to hazard insurance. As such, SLS is in a precarious position. SLS can either comply fully with federal regulations by sending the requisite informational notices, or it can run afoul of federal regulations by failing to send the informational notices. On one hand, if SLS complies with the federal regulations and sends the hazard insurance letter, it runs the risk of dealing with a potential suit under the FDCPA and FCCPA, as is what happened in this case. On the other hand, SLS can choose to not comply with federal regulations and subject itself to litigation and penalties for failure to comply. Should this Court find that sending the required hazard insurance letter violates the FCCPA and FDCPA, SLS will be penalized for making its best effort to comply with federal regulations.

The Consumer Financial Protection Bureau ("CFPB") has enacted servicing rules that require a loan servicer to provide disclosures to borrowers regarding force placed insurance. 12 C.F.R. § 1024.37; *See Mackiewicz v. Nationstar Mortgage, LLC*, Case No. 6:15-cv-465-Orl-18GJK, 2015 WL 13814897, *4 (Fla. M.D. June 25, 2015). On October 15, 2013, the CFPB issued a ruling (the "CFPB Ruling") advising that such disclosures

> …are specifically mandated by the Dodd-Frank Wall Street Reform and Consumer Protection Act, which makes no mention of their potential cessation under the FDCPA and presents a more recent and specific statement of legislative intent regarding these disclosures than does the FDCPA.

CFPB Bulletin, 2013-12, available at http://files.consumerfinance.gov/f/201310_cfpb_mortgage-servicing_bulletin.pdf; *Mackiewicz*, 2015 WL 13814897 at *4. Per the CFPB Ruling, the required

hazard insurance disclosures provide information regardless of a consumer's collection status. *Id*. Section 1692k(e) of the FDCPA provides that liability under the FDCPA cannot arise from "any act done or omitted in good faith conformity with an advisory opinion of the [CFPB]…."  15 U.S.C. § 1692k(e); *Mackiewicz*, 2015 WL 13814897 at *4.

A loan servicer's obligation to disclosure information pertaining to force placed insurance is set forth in 12 C.F.R. §1024.37.  Under Section 1024.37, a servicer must provide written notice containing specific information prior to assessing any charge or fee relating to force placed insurance. 12 C.F.R. § 1024.37(c); *Mackiewicz*, 2015 WL 13814897 at *4.  Where a servicer reasonably concludes, in good faith conformity with Section 1024.37, that it is obligated to send a hazard insurance letter, there can be no liability under the FDCPA.  *Mackiewicz*, 2015 WL 13814897 at *4.

In addition to delineating specific information that must be included in an informational notice regarding force placed or hazard insurance, the CFPB provides model forms for letters in an effort to reduce misinterpretations.  12 C.F.R. § 1024.37(c)(3).  In Section 1024.37(c)(3), the CFPB directs servicers to form MS-3A, provided as an appendix to that section.  12 C.F.R. § 1024.37(c)(3).  Model form MS-3A provides the following, with introductory language of the form omitted:

> Our records show that your [hazard] [Insurance Type] insurance [is expiring] [expired] [provides insufficient coverage], and we do not have evidence that you have obtained new coverage. Because [hazard] [Insurance Type] insurance is required on your property, [we bought insurance for your property] [we plan to buy insurance for your property]. **You must pay us for any period during which the insurance we buy is in effect but you do not have insurance**.
>
> You should immediately provide us with your insurance information. [Describe the insurance information the borrower must provide]. [The information must be provided in writing.]

20

> The insurance we [bought] [buy]:
>
> • May be significantly more expensive than the insurance you can buy yourself.
>
> • May not provide as much coverage as an insurance policy you buy yourself.
>
> If you have any questions, please contact us at [telephone number]. [If applicable, provide a statement advising a borrower to review additional information provided in the same transmittal.]

12 C.F.R. 1024.37, Appx. MS-3, Form MS-3(A) (emphasis added). Several courts have determined that compliance with Section 1024.37 acts to prevent any purported violation of the FDCPA. *Alhasid v. Nationstar Mortgage LLC*, Case No. 1:16-cv-21211-KMM, 2016 WL 4269867, *2 (Fla. S.D. Aug. 10, 2016) (granting a motion to dismiss with prejudice for claims under the FDCPA and FCCPA relating to hazard insurance letters); *Mohr*, 448 F. Supp. 3d at 962 (N.D. Ind. 2020) *Preuher v. Seterus, LLC*, No. 14-C-6140, 2014 WL 7005095 (N.D. Ill. Dec. 11, 2014).

Here, the hazard insurance letter mirrors the model form provided by the CFPB. Importantly, the very language that Plaintiff pulls from the letter, stating "you must pay…", is the precise verbiage provided by the CFPB. SLS is obligated to comply with federal regulations in servicing Plaintiff's Mortgage, and accordingly sent the hazard insurance letter to inform Plaintiff as required. The FDCPA itself provides that good faith attempts to comply with the CFPB are not actionable under the FDCPA. *See* 15 U.S.C. 1692k(e). As SLS has provided the required notice using the CFPB's model form, there can be no liability under the FCCPA or FDCPA.

**D. Plaintiff's claims for punitive damages under the FCCPA should be struck because Plaintiff fails to plead facts plausibly giving rise to punitive damages.**

Plaintiff improperly pleads a request for punitive damages as to her FCCPA claim in Count III of the Amended Complaint. In a federal court's review of state law claims, a federal procedural

rule governs over conflicting state law. *Cohen v. Office Depot, Inc.*, 184 F. 3d 1292, 1298 (11th Cir. 1999) vacated in part on other grounds, 204 F. 3d 1069, 1076-77, 1083 (11th Cir. 2000); *Levi Holding LLC v. Scottsdale Insurance Company*, Case No. 2:18-cv-361-FtM-29MRM, 2020 WL 2039721, *6 (M.D. Fla. 2020).  In light of that principle, the Eleventh Circuit has held that § 768.72, Fla. Stat., prohibiting claims for punitive damages in an initial complaint conflicts with Fed. R. Civ. P. 8(a)(3) and does not apply.  *Cohen*, 184 F. 3d at 1298.  Notwithstanding, the Eleventh Circuit has further held that the substantive pleading standard of  § 768.72, Fla. Stat., is not in conflict with Fed. R. Civ. P. 8(a)(2), finding that a prayer for punitive damages is not a "claim" within the meaning of the rule.  *Id*. at 1297.  Accordingly, the pleading requirements dictating requirements for punitive damages in § 768.72, Fla. Stat., remain applicable.  *Levi Holding LLC*, 2020 WL 2039721 at *6.  Pursuant to Florida law, conclusory allegations in a complaint are insufficient to entitle a claimant to recover punitive damages.  *Porter v. Ogden, Newell, & Welch*, 241 F. 3d 1334, 1340-31 (11th Cir. 2001).  A plaintiff therefore must plead specific acts committed by a defendant. *Id*.

Under the FCCPA, punitive damages are permitted.  Fla. Stat. § 559.77.  However, punitive damages under the FCCPA are allowed "only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence."  *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197, 1214 (M.D. Fla. 2015); Fla. Stat. § 768.72(2).  "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."  *Id*. at 1214.

Plaintiff's allegations simply do not rise to the level of intentional misconduct or gross negligence, as required to support a claim for punitive damages under the FCCPA.  Upon a reading

most favorable to Plaintiff, the allegations against SLS are tantamount to carelessness at best.  The correspondence, as set forth above, is informational in nature and is valuable to Plaintiff for a number of reasons.  Namely, the correspondence provided her information regarding the subject loan which assists Plaintiff in avoiding foreclosure or selling the property to a third party, which would necessitate accurate payoff information.  Accordingly, in the event that Count III is not dismissed in its entirety for the reasons set forth elsewhere in this Motion to Dismiss, Plaintiff's claims for punitive damages in Count III should be stricken.

**E.  Count VII of the Amended Complaint should be dismissed because it fails to state a claim as is evidenced by the exhibits attached to the Amended Complaint.**

In Count VII of the Amended Complaint, Plaintiff alleges that SLS violated the FCRA by reporting the account without regard for Plaintiff's bankruptcy discharge.  However, the credit report attached to the Amended Complaint does not indicate any reporting of Plaintiff's account by SLS.  Dkt. 35-5.  Despite containing conclusory allegations that SLS is inaccurately reporting Plaintiff's account and/or failed to investigate the dispute in a reasonable manner, it is evident from Plaintiff's exhibits that the account is not reported.  Dkt. 35 at ¶ 33-42; Dkt. 35-5.  Further, the only reference to SLS in the exhibit is that the SLS account was updated following the dispute. Dkt. 35-5.  It is well settled that exhibits attached to pleading control over allegations made in the pleading itself.  *Griffin Industries, Inc. v. Irvin*, 496 F. 3d 1189, 1205-06 (11th Cir. 2007). Accordingly, this Court should dismiss Count VII of the Amended Complaint for failure to state a cause of action.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Plaintiff's Amended Complaint fails to state a cause of action as a matter of law and this Court should dismiss the Amended Complaint with prejudice.

WHEREFORE, Defendant respectfully requests this Court grant its Motion to Dismiss and enter an Order dismissing Plaintiff's Amended Complaint with prejudice, as well as for further relief as this Court deems just and proper.

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Wesley Ridout*
Christina M. Schwing, Esq.
Florida Bar No. 11420
chris.schwing@hklaw.com
R. Carter Burgess, Esq.
Florida Bar No. 058298
carter.burgess@hklaw.com
Wesley Ridout, Esq.
Florida Bar No. 0084609
wesley.ridout@hklaw.com
50 N. Laura St., Suite 3900
Jacksonville, FL 32202
Tel: (904) 353-2000
Fax: (904) 358-1872

***Counsel for Defendant Specialized Loan Servicing LLC***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 25, 2020, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

/s/ *Wesley Ridout*
Attorney