# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JACQUELYN CRUSE, individually and on behalf of all others similarly situated

    Plaintiff,

v.

SPECIALIZED LOAN SERVICING, LLC and EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendants.

CASE NO. 3:20-cv-506-J-34JBT

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Experian Information Solutions, Inc. ("Experian") respectfully moves to dismiss Plaintiff Jacquelyn Cruse's ("Plaintiff") Second Amended Complaint [ECF No. 35] (the "SAC").

## INTRODUCTION

There are two fundamental and dispositive flaws in Plaintiff's claims against Experian for violations of the Fair Credit Reporting Act ("FCRA"). First, her theory as to why Experian's reporting was inaccurate – that her mortgage with Specialized Loan Servicing, LLC ("SLS") was discharged in her Chapter 13 bankruptcy – is foreclosed by the antimodification provision of the Bankruptcy Code as well as Supreme Court and Eleventh Circuit precedent. Second, her theories as to what Experian was required to do – determine whether the SLS debt was in fact discharged in her bankruptcy – are foreclosed by congressional intent and case law construing the FCRA, including recent a case in this district dispelling the exact same theory Plaintiff advances here. Either way, Plaintiff's claims fail and should be dismissed.

## BACKGROUND

**I.     THE FAIR CREDIT REPORTING ACT.**

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Among other things, the FCRA requires "consumer reporting agencies" ("CRAs") like Experian to have "reasonable procedures to assure maximum possible accuracy" of information in "consumer reports[.]" *See* 15 U.S.C. § 1681e(b). Under the FCRA, CRAs are those entities who assemble consumer credit information for the purposes of providing consumer reports to third parties. *See id.* at § 1681a(f). By contrast, "furnishers of information" (sometimes referred to as "data furnishers"), are those entities who "regularly and in the ordinary course of business furnish[] information to one or more consumer reporting agencies" regarding consumers' credit accounts. *See id.* at § 1681s-2(a)(2). As other courts have summarized, CRAs like Experian are third-parties to consumer credit information, "[t]hey simply collect and report information furnished by others." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010).

The FCRA contains specific provisions addressing the roles CRAs, data furnishers, and consumers play in disputing information. The data furnisher has an affirmative duty to "promptly notify" the CRAs if the data furnisher determines that information it has provided on a consumer is not accurate. *See* 15 U.S.C. § 1681s-2(2). The FCRA allows consumers to dispute credit information directly with the data furnisher who must *investigate* all such claims. *See id.* at § 1681s-2(a)(8). By comparison, consumers may also dispute information with the CRAs, who must then conduct a *re*investigation. *See id.* at § 1681i(a). In conducting a reinvestigation, a CRA must notify the data furnisher, providing it all relevant information about the consumer's dispute. *See id.* at § 1681i(a)(2). Upon receipt of this notice, the data

2

furnisher must then conduct an investigation into the dispute and report those results back to the CRA. *See id*. at § 1681s-(b). Indeed, as the Ninth Circuit has summarized, "the central aspect of the CRA's own investigation" is the notice of dispute it sends to the furnisher, because under the FCRA's statutory scheme, "the CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009). If a dispute does not resolve the issue for the consumer, the FCRA allows them to place a statement on the account explaining the consumer's position, and this statement must be included with any future consumer report that contains the disputed account. *See id*. at §§ 1681i(b)-(c).

## II. CHAPTER 13 OF THE UNITED STATES BANKRUPTCY CODE.

Chapter 13 of the United States Bankruptcy Code "enables individuals with regular income to develop a plan to repay all or part of their debts." *See* Chapter 13—Bankruptcy Basics, USCOURTS.GOV, *available at* https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-13-bankruptcy-basics; *see also* 11 U.S.C. § 1322. In a Chapter 13 bankruptcy, "debtors propose a repayment plan to make installments to creditors [through a trustee] over three to five years." *See* Chapter 13—Bankruptcy Basics. During this time, the debt remains valid and the legal status of the debt does not change until the debtor receives a bankruptcy discharge. *See Mosley v. Monterey Fin. Servs., LLC*, No. 16-03614, 2017 WL 8186861, at *5 (N.D. Ga. May 10, 2017). To receive a discharge under Chapter 13, the debtor must fully complete his or her performance of the plan. 11 U.S.C. § 1328(a). The bankruptcy code, however, expressly limits a debtor's ability to modify the rights of the mortgage holders on the debts secured by the debtor's principle residence. These debts cannot be modified or discharged. *See* 11 U.S.C. § 1322(b)(2).

### III. FACTUAL ALLEGATIONS

In May 2014, Plaintiff filed a Chapter 13 bankruptcy. SAC ¶ 13; *see also In re Cruse*, 3:14-bk-2423-PMG, Doc. 1 (Bankr. M.D. Fla. May 16, 2014)(hereafter "*In re Cruse*").[1] In her bankruptcy schedules, Plaintiff listed a mortgage held by Bank of America, N.A., secured by property at 235 East 25th Street, Jacksonville, Florida. *Id.* Plaintiff scheduled the claim for $34,142.00, with only $1,142 listed as unsecured. *In re Cruse*, Doc. 1 at 15. Although scheduling the property as rental property, "the home was originally purchased as homestead by Plaintiff and she resided there for a period of time as her homestead prior to renting it to tenants." SAC ¶ 13. Plaintiff's confirmed Chapter 13 plan indicated that Plaintiff would "surrender her interest in the [property] in satisfaction of the debt." *In re Cruse*, Doc. 5, at 2. On July 3, 2018, the Bankruptcy Court entered an order granting Plaintiff a discharge in her bankruptcy. *In re Cruse*, Doc. 54. Relevant here, the discharge order does not specify what debts are discharged, including only some examples of types of debts that are not discharged, and includes a specific warning to the reader:

> This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.

*Id.* at 2.

---

[1] Experian requests the Court take judicial notice of the filings in Plaintiff's bankruptcy referenced in this Motion.

4

In October 2019, SLS became the servicer on the mortgage debt, which was now in default and 48 months past-due. *See* SAC ¶¶ 18-19. Thereafter, SLS began sending Plaintiff billing statements and demanded payment on the debt. *Id.* at ¶ 20. Around the same time, SLS began reporting the debt to Experian. *Id.* ¶ 33. On March 11, 2020, US Bank filed a foreclosure action in Duval County Circuit Court, seeking possession of the property, accrued interest and fees, and indicating that Plaintiff would be personally liable on the debt, unless the debt had been discharged in bankruptcy. *See* Exhibit A (Foreclosure Complaint). Plaintiff alleges that on March 14, 2020, she submitted a letter to Experian disputing the account. *Id.* ¶ 34. Plaintiff alleges that Experian then notified SLS of the dispute. *Id.* ¶ 36. Plaintiff claims that Experian failed to conduct a reasonable reinvestigation, but makes no allegations regarding what Experian *should have* done to comply with its obligations. She alleges that after her dispute, Experian's reporting remained inaccurate because it was reporting that foreclosure proceedings had begun and did not indicate that the SLS account had been discharged in her bankruptcy. *See id.* at ¶¶ 35; 42. Experian's reporting of the debt after Plaintiff's dispute is pictured below:



*See* Exhibit B at 2 (Dispute Results Excerpt).

## **LEGAL STANDARD.**

Federal Rule of Civil Procedure 12(b)(6) requires the Court to dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).[2] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)("[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"). While courts must accept the well-pleaded facts in the complaint as true, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1330 (11th Cir. 2012)(internal quotations omitted). The Court must reject mere legal conclusions. *Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011)(citing *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010)). On a Rule 12(b)(6) motion, courts can properly consider publicly filed documents such as court dockets. *See*, *e.g., U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).

## **ARGUMENT**

Plaintiff's claims face two insurmountable and interconnected hurdles. Her theory as to why Experian's reporting of the SLS Account is inaccurate runs counter to controlling law. Simply put, Plaintiff's Chapter 13 bankruptcy did not discharge her liability on this mortgage

---

[2] Although Experian answered Plaintiff's original complaint, the pleadings remain open, and Experian believes this Motion is properly made under Federal Rule 12(b)(6). Alternatively, Experian moves under Fed.R.Civ.P. 12(c), which uses the same standard as a motion under Rule 12(b)(6). *See*, *e.g.*, *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018)("[t]he standards for reviewing decisions on motions to dismiss and motions for judgment on the pleadings are the same").

6

debt because a Chapter 13 debtor *cannot* discharge liability on a mortgage secured by the debtor's principle residence. Related to this failing is the fact that the reasonable procedures and reinvestigation requirements of the FCRA do not require or expect Experian to determine whether Plaintiff remains liable on the SLS Account, which, at best, involves mixed questions of fact and law. Instead, Congress and case law have long taught that because Experian is a third-party to the information it reports, it fulfills its duties by doing exactly what Plaintiff alleges Experian did here: forwarding consumer disputes to the creditor so that they can investigate the dispute. Without a plausible theory of inaccuracy or a plausible connection to Experian's failure to employ reasonable procedures or to conduct a reasonable reinvestigation, Plaintiff's claims against Experian fail and should be dismissed.

## I. PLAINTIFF FAILS TO PLEAD INACCURACY.

At the heart of all FCRA claims complaining of erroneous credit reporting is the element of factual inaccuracy. The existence of inaccurate information is a necessary part of the *prima facie* case a Plaintiff must allege to state a claim under sections 1681e(b) and 1681i. *See*, *e.g.*, *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009)("To establish a prima facie violation of § 1681e(b), a consumer must present evidence that [] a credit reporting agency's report was inaccurate"); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156-60 (11th Cir. 1991)("In order to make out a *prima facie* violation of [§ 1681e(b)] the Act implicitly requires that a consumer must present evidence tending to show that a credit reporting agency prepared a report containing 'inaccurate' information . . . a [§ 1681i] claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry.").

7

Here, it is evident that Plaintiff cannot plausibly claim that the information Experian is reporting on the SLS Account is factually inaccurate. It is a matter of public record that foreclosure proceedings have in fact begun, and Plaintiff herself admits that it has been years since she made a payment. *See* Ex. A; SAC ¶ 18. Plaintiff makes no allegation that the balance information Experian is reporting is incorrect (*e.g.* that another non-zero balance was owed), the recent balance closely tracks the amount Plaintiff listed in her bankruptcy schedules, and the amount past due presumably is due to the interest and fees that have accrued over the years since Plaintiff last made a payment.

Instead, the focus of Plaintiff's claims that Experian's reporting of the SLS Account is inaccurate turns entirely on her Chapter 13 discharge. *See* SAC ¶¶ 35, 42 ("Experian responded to the Dispute Letter, finding that SLS's information was verified as accurate and updated on Plaintiff's credit report, reflecting not only late payments for the discharged obligation, but also that a foreclosure had begun against Plaintiff . . . Defendant SLS in fact had the audacity to include a foreclosure now on Plaintiff's discharged account"). But there are two distinct problems with this theory: it is barred by the anti-modification provision of 11 U.S.C. § 1322(b)(2) and applies a definition of "accuracy" that does not apply to Experian under the statutory and regulatory scheme of the FCRA.

### A. Plaintiff Has Not Plausibly Alleged That The SLS Account Was Discharged In Her Bankruptcy.

A Chapter 13 discharge order discharges a debtor's personal liability on any debt "provided for by the plan." *See* 11 U.S.C. § 1328(a). The terms of a Chapter 13 bankruptcy plan are constrained by § 1322 of the Bankruptcy Code. Relevant here, § 1322(b)(2) allows a debtor to "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*" *Id.*

§ 1322(b)(2)(emphasis added). The Supreme Court has explained that this "antimodification" provision protects the "bargained for rights" between the mortgagor and mortgagee, and bars the modification of the mortgage-holders contractual rights, "includ[ing] the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993). More recently, the Eleventh Circuit has held that discharging a mortgage on a principle residence violates the antimodification provision:

> Even if the plan were somehow construed as "provid[ing] for" the Credit Union's mortgage, there could still be no discharge of the mortgage given the antimodification provision in § 1322(b)(2). The antimodification provision prohibits a plan from modifying "the rights of [a] holder[ ] of . . . a claim secured only by a security interest in real property that is the debtor's principal residence." Clearly, a discharge of a debtor's obligations under his residential mortgage would dramatically modify the rights of the holder of that mortgage . . . Removal of the Credit Union's right to pursue *in personam* liability against Debtor, however, would necessarily modify the Credit Union's rights because it strips the Credit Union of a right provided by the original loan instruments. A creditor's rights "protected from modification by § 1322(b)(2)" are the rights under the original loan instruments as defined by state law. Under Florida law (the law governing the Credit Union's mortgage), the Credit Union has the right to seek a deficiency judgment against Debtor. By terminating the Credit Union's right to obtain an *in personam* judgment against the debtor, discharge undoubtedly modifies the Credit Union's rights and runs afoul of the antimodification provision.

*In re Dukes*, 909 F.3d 1306, 1320–21 (11th Cir. 2018)(citations omitted)(holding that construing a confirmed plan that did not specify that it intended to discharge mortgages as in fact discharging those debts would violate 11 U.S.C. § 1322(b)(2)).

Here, Plaintiff clearly alleges that the SLS Account was a mortgage on her principle residence. SAC ¶ 13. While Plaintiff later rented the property, that is of no consequence.

9

Because the antimodification provision's goal is to protect the mortgage-holders bargained-for rights, courts have held that "for purposes of § 1322(b)(2), the critical moment is when the creditor takes a security interest in the collateral." *In re Scarborough*, 461 F.3d 406, 412 (3d Cir. 2006).[3] Plaintiff might also argue that Experian is attacking the bankruptcy court's orders or that it is too late to question the terms of her confirmed plan. *See*, *e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 273, (2010)(plain legal error did not render order confirming Chapter 13 plan void). But Plaintiff's Chapter 13 plan says only that she would "surrender her interest in the [property] in *satisfaction* of the debt." The plan is wholly silent as to whether this constitutes an impermissible attempt to modify or discharge the mortgage debt, and such vagaries are construed against the debtor. *See In re Dukes*, 909 F.3d at 1320 ("So Debtor must 'pay the price if there is any ambiguity' in her plan's terms.")(quoting *Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 591 (11th Cir. 1985)).

The reality is, in accordance with *Nobelman* and *Dukes*, Plaintiff simply could not discharge the SLS Account in a Chapter 13 bankruptcy. If she wanted to do so, she needed to file under another chapter. *See In re Hunt*, No. 14-02212-5-DMW, 2015 WL 128048, at *4 (Bankr. E.D.N.C. Jan. 7, 2015)(holding that a debtor could not discharge his mortgage in Chapter 13 and stating "[i]f the Debtor wants to discharge the [mortgage] . . . maybe a Chapter 7 would be more suitable"). Her theory as to why Experian's reporting is inaccurate is barred by applicable law, and at the very least, not plausible.[4]

---

[3] This, of course, makes perfect sense. Otherwise any home owner seeking to sidestep Chapter 13's prohibition on discharging a mortgage on a principle residence could simply "rent" the home out for a month or two and proceed to strip the mortgage-holder of its bargained for rights.

[4] Notably, the SAC is bereft of any allegations that her treatment of the SLS mortgage was somehow excepted from these controlling cases.

10

### B.     Accurate Credit Reporting By A CRA Does Not Include Determining Issues of Liability.

Even supposing *arguendo* that Plaintiff had been able to discharge the SLS Account in her bankruptcy, that would not render Experian's reporting inaccurate for purposes of the FCRA in any event. A bankruptcy discharge does not render a debt void, "[r]ather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*" *Johnson v. Home State Bank*, 501 U.S. 78, (1991). Thus, at most, Plaintiff can allege that her personal liability was extinguished in her bankruptcy, but that is not enough.

The scheme established by the FCRA principally regulates CRAs like Experian, and "furnishers of information" like SLS. Earlier this year, the Seventh Circuit conducted a detailed analysis of the FCRA and its accompanying regulations with respect to the meaning of "accuracy" in § 1681e(b) and § 1681i:

> Section 1681e(b) does not explain what it means to be "inaccurate," nor does it draw a line between factual and legal "accuracy." Plaintiffs contend there is no line, arguing that § 1681e(b) requires consumer reporting agencies to verify the factual and legal accuracy of information contained in credit reports . . . this argument does not find support in the FCRA or its implementing regulations. The FCRA imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market . . . the FCRA does not require unfailing accuracy from consumer reporting agencies. Instead, it requires a consumer reporting agency to follow "reasonable procedures to assure maximum possible accuracy" when it prepares a credit report. 15 U.S.C. § 1681e(b). Furnishers, too, must ensure accurate consumer-credit reporting. "Accuracy" for furnishers, however, means information that "correctly [r]eflects ... liability for the account." Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt. Here, plaintiffs contend not only that Trans Union had a duty to verify plaintiffs' debt liability, but that Trans Union "knew or recklessly ignored" that their loans "are void and uncollectible as a matter of clearly established law." Their claims, though, attempt to graft responsibilities of data furnishers and tribunals onto a consumer reporting agency. Only furnishers are tasked with accurately reporting liability. And it makes sense that furnishers shoulder this burden:

11

> they assumed the risk and bear the loss of unpaid debt, so they are in a better position to determine the legal validity of a debt.

*Denan v. Trans Union LLC*, 959 F.3d 290, 294–95 (7th Cir. 2020)(citing 12 C.F.R. 1022.41(a); other citations omitted)(holding that the accuracy requirements of the FCRA did not require a CRA to determine if plaintiff was liable on a usurious loan).

*Denan*'s exposition is in line with a long line of case law. For instance, in *DeAndrade v. Trans Union, LLC*, 523 F.3d 61 (1st Cir. 2008), the First Circuit held that the FCRA did not require a CRA to determine if a consumer was liable where he alleged a contract was obtained by fraud. In *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010), the Ninth Circuit, held that the FCRA did not require a CRA to determine if a consumer was liable on a medical debt she believed was covered by her insurance. In *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232 (10th Cir. 2015), the Tenth Circuit held that accuracy did not require a CRA to determine if a tax lien was valid. In this District, courts have applied these principles to hold that the FCRA did not require a CRA to determine if a consumer was liable on a loan they alleged violated Florida's usury laws. *See Padgett v. Clarity Servs., Inc.*, No. 8:18-CV-1918-T-30CPT, 2018 WL 6628274, at *1 (M.D. Fla. Dec. 13, 2018).

In each of these cases, plaintiffs alleged that they had some legal defense to the enforcement of the debt (*e.g.*, the contract was void or uncollectable). Each claim failed because "accuracy" for a CRA like Experian does not extend to determining issues of liability. But a bankruptcy discharge is simply another species of "a legal defense to payment." *Perry v. Toyota Motor Credit Corp.*, No. 1:18CV00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019)(allegations that a vehicle lease was discharged failed to state a claim against a CRA). If Plaintiff is correct that the SLS Account is discharged, then she is no longer personally liable on the debt, and has a defense should SLS try to recover any post-foreclosure deficiency. But

12

this is fundamentally no different that the defenses the plaintiffs in *Denan*, *DeAndrade*, *Carvalho*, *Wright*, *Padgett*, or a host of other district-court decisions applying the general rule that where the "inaccuracy" alleged is one of legal liability, it fails to state a claim under § 1681e(b) or § 1681i.[5]

In the end, it is not sufficient for Plaintiff to simply label Experian's reporting of the SLS Account "inaccurate," she must plausibly allege facts that would support that conclusion. She has not done so and her claims against Experian should be dismissed.

## II. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE A FAILURE TO USE REASONABLE PROCEDURES OR CONDUCT A REASONABLE REINVESTIGATION.

"The FCRA does not make consumer reporting agencies strictly liable for all inaccuracies . . . ." *Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 745 (11th Cir. 2020); *see also Lazarre v. JP Morgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1328 (S.D. Fla. 2011). Rather, a CRA must only follow "reasonable procedures to assure maximum possible accuracy of each credit [disclosure]." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009)(citing *Cahlin*, 936 F.2d at 1156). After receiving a dispute, the agency must also "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a). Thus, it is not enough to merely claim that Experian's reporting is inaccurate, Plaintiff must allege that the inaccuracy was caused by Experian's failure to employ reasonable procedures or to conduct a reasonable reinvestigation. *See*, *e.g.*,

---

[5] This is not to say that the FCRA provides Plaintiff no recourse. It is consistent with *Denan*, that Plaintiff try to hold SLS liable under § 1681s-2(b). And it has long been recognized in this Circuit "that Congress provided a unique remedy for consumers to dispute how a particular dispute is characterized or interpreted on their credit report by allowing them to enclose a statement as to their version of the dispute. In this way, potential creditors have both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *Cahlin*, 936 F.2d at 1160.

*Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1282 (11th Cir. 2017)(upholding dismissal where plaintiff failed to plausibly allege that inaccurate information was caused by a willful failure to employ reasonable procedures under 15 U.S.C. § 1681e(b)); *Jackson v. Equifax Info. Servs., LLC.*, 167 F. App'x 144, 146 (11th Cir. 2006)("[A]n agency can escape liability if it establishes that an inaccurate report was generated following reasonable procedures.").

### A.    Reasonableness and Consumer Bankruptcies Under the FCRA.

The above discussion of Plaintiff's failure to allege inaccurate information reveals a deeper flaw with her claims against Experian that are part-and-parcel to this failure. Neither § 1681e(b) nor § 1681i require Experian to determine whether the SLS account was discharged in Plaintiff's bankruptcy because no *reasonable* procedures or *reasonable* reinvestigation would require Experian to undertake the kind of factual and legal analysis required to make this determination. Nearly twenty years ago, the Eleventh Circuit made a similar point. In *Cahlin*, the plaintiff claimed that a CRA was inaccurately reporting a deficiency balance based on alleged oral promise he received from the dealership and an agreement with the dealership to accept payment for a lesser amount. 936 F.2d at 1155. In upholding summary judgment, the *Cahlin* court explained the relationship between the kind of inaccuracy alleged and the FCRA's requirements to use reasonable procedures and to conduct reasonable reinvestigations, explaining:

> When a consumer brings a claim for violation of [§ 1681i], a court is generally called upon to determine whether the credit reporting agency could have discovered an error in a particular report through a reasonable investigation. Thus, a section 611(a) claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry. In this case, however, no additional amount of factual investigation [] would have revealed any "inaccuracy" in its reporting . . .

*Id.* at 1160 (emphasis original).

Following *Cahlin*, in 1996, Congress amended the FCRA to add § 1681s-2, holding that furnishers can be liable for inaccurate reporting. In doing so, Congress specifically addressed the limited role CRAs play:

> Currently, the FCRA does not apply to those entities that furnish information to consumer reporting agencies. The Committee believes that this gap in the FCRA's coverage weakens the accuracy of the consumer reporting system. The consumer reporting agencies may dutifully respond to inquiries from consumers and attempt to verify disputed information by contacting the furnisher. If the furnisher of the information acts irresponsibly in verifying the information however, inaccurate information may remain on the report and the consumer is left with little or no recourse . . . *The expansion of the FCRA's coverage makes particular sense because it is creditors and other furnishers of information, not consumer reporting agencies, that have direct access to the facts of a given credit transaction. Ordinarily, the creditor is best situated to determine whether the information it reported was inaccurate or incomplete and to ensure its correction.*

S. REP. 103-209, 6 (*available at* 1993 WL 516162)(emphasis added); *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010)(explaining that the 1996 amendments were "identified 'gap in the FCRA's coverage,' whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers.").

Following *Cahlin* and the 1996 amendments to the FCRA, the question then, is whether reasonable procedures or a reasonable reinvestigation would require a CRA, a third-party to the information who lacks direct access to the facts, to address the issue presented when a consumer claims that the CRA's reporting is inaccurate. Unsurprisingly, in the context of mortgage debts and Chapter 13 bankruptcies, courts have repeatedly held that it is beyond the scope of what reasonableness would require to ask a CRA to determine if a mortgage was discharged. *See*, *e.g.*, *Davis v. Carrington Mortg. Servs.*, *LLC*, 454 F. Supp. 3d 996, 1005, n.6 (D. Nev. 2020)("[T]he only practical means to determine whether Davis's mortgage was discharged or not is for Experian to 'scour all the [bankruptcy] filings' and 'consult with an

attorney to determine whether a certain account may fall into one of the many exceptions to discharge,' . . . This far exceeds Experian's obligations under the FCRA to follow reasonable procedures to assure maximum possible accuracy."); *Cristobal v. Equifax, Inc.*, No. 16-06329, 2017 WL 1489274, at *3, n.4 (N.D. Cal. Apr. 26, 2017)(citations omitted)("The Court similarly agrees that Equifax is not capable or required to 'resolv[e] a legal dispute between Plaintiff and her creditors' about the confirmation plan's effect on the legal status of her debt. The law does not require the CRAs to act as a tribunal or 'scour' a bankruptcy file and make judgments about which debts are included.'"); *Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016)("[R]equiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party . . . . This is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer.").

Underscoring this conclusion, earlier this year, a sister-court in this district agreed with Experian that it is not required to determine what specific debts are discharged in a consumer's bankruptcy. In *Losch v. Experian*, the plaintiff argued that Experian's reporting of his mortgage debt was inaccurate in light of a late-filed rescission of a reaffirmation agreement in his Chapter 7 bankruptcy. No. 18-80999, 2020 WL 728606, at *1 (M.D. Fla. Feb. 12, 2020) *appeal docketed*, No. 90-567 (11th Cir. Feb. 21, 2020). In granting Experian's motion for summary judgment, the court specifically addressed whether Experian should have reviewed Plaintiff's bankruptcy to determine the accuracy of its reporting:

> Contrary to Losch's argument, the statute does not impose any duties on the credit-reporting agency other than notifying the furnisher of the dispute and examining any information the consumer submits. *See* 15 U.S.C. §§ 1681i(a)(2), (4). Losch did not provide Experian with any specific

information from which it could have discovered that he no longer owed money on the Nationstar mortgage. His failure to do so is dispositive in this case. And even if Experian should have examined the bankruptcy court docket—which Losch did not provide—*the statute does not require a credit-reporting agency's investigation to include examining court orders and other documents to determine their legal effect. Losch's theory of liability here is a bridge too far.* Experian did what the statute requires: it contacted Nationstar, which verified the accuracy of the information Experian had reported. Experian did not violate the FCRA, and Losch's claims fail.

*Id.* at *3 (emphasis added).[6]

Simply put, the reasonableness requirements of sections 1681e(b) and 1681i act as a kind of outer bounds of liability for a CRA like Experian. The requirements of § 1681e(b) require Experian to ensure that it obtains information in the first instance from reputable sources like financial institutions. *See*, *e.g. Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004); *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985)(granting summary judgment on section 1681e(b) claim where "the plaintiff has simply presented no evidence indicating that the defendant's initial reliance on the information provided by FMCC was not reasonable."). The reinvestigation requirements of section 1681i similarly "make[] clear that a credit-reporting agency's duty is to notify [] the furnisher of the disputed information of the substance of the dispute and provid[e] it with all relevant information received from the consumer." *Losch*, 2020 WL 728606, at *3 (citation and internal quotations omitted)(alterations in original). "[T]he statute does not impose any duties on the credit-reporting agency other than notifying the furnisher of the dispute and

---

[6] Because Plaintiff will likely claim that this is a fact issue, the Court should note that the *Losch* Court previously denied Experian's motion to dismiss, holding that plaintiff plausibly alleged an inaccuracy. *See Losch*, 2019 WL 3934448, at *3-4. But the *Losch* summary judgment ruling was based on the same facts which the plaintiff had alleged in his complaint, and which mirror Plaintiff's here. Namely, that to reinvestigate his dispute, Experian contact the creditors who verified the reporting.

examining any information the consumer submits." *Id.* (citing 15 U.S.C. §§ 1681i(a)(2), (4)). This limitation makes sense in a case like this one, where Experian is a third-party to the bankruptcy, as well as to the disputed information.

### B. Experian Was Not Required To Do More Than Plaintiff Alleges.

Plaintiff alleges that, upon receiving Plaintiff's dispute, "Experian notified SLS of Plaintiff's dispute of the Debt." SAC ¶ 36. In fact, this is exactly what happened, Experian, as it did in *Losch*, sent SLS an Automated Dispute Verification ("ACDV") form that attached Plaintiff's dispute letter.[7] But as in *Losch*, this is all that the FCRA requires of Experian.

It is worth considering what other actions Experian could even attempt to determine if the SLS Account was discharged. Similar to *Losch*, Plaintiff's dispute letter did not contain any proof that the SLS account was in fact discharged, so Experian would have to scour the filings in Plaintiff's bankruptcy to determine how the SLS Account was treated. But Plaintiff did not include documents that would have allowed Experian to determine that the scheduled debt, listed as being held by Bank of America, was in fact the same debt being reported by SLS, a crucial fact since SLS appears nowhere in Plaintiff's bankruptcy docket or filings. *See generally, In re Cruse*. Even supposing that Experian could have determined that the two accounts were the same debt, it would be faced with Plaintiff's vague bankruptcy plan that makes no indication that the mortgage would be discharged and a summary discharge order that does not specify what debts it applies to, and directs the reader to obtain legal advice to decipher it. Had these deficiencies not totally prevented Experian (or anyone) from

---

[7] While this fact might arguably be outside the pleadings, Experian would readily submit a copy of the ACDV should the Court wish to view it. Because the notice Experian sent to SLS is integral to Plaintiff's claims, it is part of the pleadings and need not convert this motion to one for summary judgment to rely on this document. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

determining that the debt was discharged, Experian would then have to reconcile this conclusion with controlling precedent in *Dukes*, which unambiguously states "there could still be no discharge of [a residential] mortgage given the antimodification provision in § 1322(b)(2)." *In re Dukes*, 909 F.3d at 1320–2.

Perhaps Plaintiff's response will offer some way to solve this puzzle, but expecting Experian to have done so is indeed a "bridge too far" and her claims against Experian should be dismissed.

## CONCLUSION

For the foregoing reasons, Experian respectfully requests the Court grant its Motion and dismiss Plaintiff's claims against Experian with prejudice.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Experian respectfully requests oral argument on its Motion.

Dated: November 27, 2020  /s/ *Maria H. Ruiz*
Maria H. Ruiz
FBN 182923
**Kasowitz Benson Torres LLP**
1441 Brickell Avenue, Suite 1420
Miami, FL. 33131
Tel: (786) 587-1044
Fax: (305) 675-2601
mruiz@kasowitz.com

Christopher A. Hall
*Pro Hac Vice*
JONES DAY
77 West Wacker
Suite 3500
Chicago, IL 60601.1692
Telephone:     +1.312.782.3939
Facsimile:     +1.312.782.8585
chall@jonesday.com

*Counsel for Defendant Experian Information Solutions, Inc.*